CATHARINE and MADISON KENNEDY, Executors of ISAAC KENNEDY, deceased, Plaintiffs in error, who were Defendants below, *v.* SAMUEL WARE, Defendant in error, who was Plaintiff below.

IN ERROR.

1. An equitable assignment of a chose in action, being an executory contract, must have a consideration to support it, without which equity would no more execute it than the law would make the breach of it a subject of compensation.

2. Such an assignment in consideration of natural love and affection is void; and a promise, predicated on the rescission of an assignment, is also void.

ERROR to the Common Pleas of Erie county.

This was an action on the case, brought by Samuel Ware against the executors of Isaac Kennedy, in which the plaintiff declared on an alleged agreement of the defendants' testator to sell and convey to the plaintiff a tract of land, called the Lull and Farnham tract, in consideration of a judgment against one Calvin F. Avery, assigned by the plaintiff to defendants' testator for $409, and breach of that agreement. The second count was general indebitatus assumpsit. To this declaration defendants pleaded non assumpsit and payment, with leave, &c. On the trial of this issue, the plaintiff produced the following evidence:

Record of judgment, Charles H. Kennedy *v.* Calvin F. Avery, No. 105, August term, 1836, for $409. Assignment thereof to Samuel Ware, dated 18th May, 1837, and assignment by Ware to Isaac Kennedy, (excepting $109,) dated 22d November, 1837. The will of Isaac Kennedy, dated 18th February, 1839, and proved 5th June, 1840. Inventory of personal goods of Isaac Kennedy, filed 3d July, 1840.

*Calvin F. Avery,* a witness for the plaintiff, being asked if he had

2 P

ever heard Isaac Kennedy say what was the consideration for the assignment by Ware to him of the above judgment, testified as follows: "The consideration of the assignment was land: this Isaac Kennedy said. Mrs. Kennedy first came to me to buy a wagon, harness, and whiffletrees, amounting to $94. She got my terms, and said there was to be a trade between us (herself and husband, Isaac Kennedy) and Ware, as to the judgment Ware had against me. She said they were to get the judgment. Isaac Kennedy came afterwards for the property, and got it. He said, if I would give him the wagon, harness, and whiffletrees, he would satisfy so much on this judgment. He got the property, and agreed that when the judgment should be assigned to him by Ware, that he would endorse the same on this judgment. Soon after this, he told me that the trade was likely to fall through, and I told him he must pay Ware for the property he had of me. · After this, saw him again, and he said the trade was going on. Afterwards, saw him again, and he said he had got from Ware the assignment of the judgment against me, and would endorse the amount of the property he got of me on it, and he gave me a receipt to that effect. At this time, he said he was to pay Ware for the assignment in land, and that he, Ware, was to have the Farnham and Lull lot for it. He told me so again, in 1838; I think, in the fall. It appears to me that it was one hundred acres of land. I have understood that there is one hundred acres in the Farnham and Lull lot. I know the land; it is situated in Wayne township. Plaintiff's wife, Polly Esther, is a daughter of Isaac Kennedy. Isaac Kennedy died in the spring of 1840. I went to Isaac Kennedy, to settle some difficulties. I, at that time, asked him what he was agoing to do as to making Ware a title to the land. He said that Ware was to have the land. The Farnham and Lull tract is the same that in Isaac Kennedy's will is willed to Wm. Campbell, another son-in-law." (Cross-examined.) "I gave the $409 for the balance due on my land to Charles H. Kennedy. I have a writing that I was to have the land for $500. The land then came into Charles' hand, and my wife and I signed a quit claim for the $500 due me. The land was Isaac Kennedy's first, which he sold to me. I gave the $909 and some cents for the land. Charles was bound in the bond to give each of the girls $500. Isaac said the rest of the girls had had $500, and Ware's was entitled to the same. The $409 was part of the $500 that Kennedy was to give to his daughter. He spoke of owing the same to Ware."

*Hannah Ware* testified as follows: "I have heard Isaac Kennedy say he must pay Samuel Ware for the judgment he had assigned to him, for he had agreed to do so. He said he was to pay Ware for it

in land; was to let him have the Farnham and Lull farm. He (Isaac Kennedy) said he wanted Ware to have the land, because he had agreed he should have it. But his wife said that he, Ware, should not have it. This was about five years ago. He said the rest had so much, and he wanted that Ware should have the same. He said the daughters had each $500, but her, and she was to have that to make her equal with them. I have frequently heard the old man say this." (Cross-examined.) "Isaac Kennedy said Ware was to have $500, or the land. He was speaking of making a disposition among his children." (Further direct.) "I understood from Mrs. Kennedy, that they had settled every thing but this land. Isaac Kennedy said, all settled, but the bond on which this judgment was entered; that he would pay this by the land or money—the Farnham and Lull lot. I have heard Isaac Kennedy say as to the quantity of land in this tract." (Cross-examined.) "He said it was his desire that all should fare alike."

And by the testimony of Calvin F. Avery: "Madison did all the business for the old man, during his illness. Charles had it awhile, and it came back, and Madison transacted his business. The old man said it was his will to settle it with Ware, but Madison and his mother would do as they had a mind to."

The defendants produced the following evidence:

*Barnes Greely* testified as follows: "I heard Ware say that he took this bond from Charles for what he (Charles) was to pay him for Isaac Kennedy. That Charles was bound to pay the $500, and did do it. Ware said, he (Charles) had made an agreement with Isaac Kennedy, by which he was to pay Ware $500, as his wife's portion. Ware, about the time of the assignment back to Isaac Kennedy of this judgment by Ware, said to the old man, 'There has been a considerable noise about this, and if you consider it yours, I will give it back to you. If you consider it yours, now take it; but if it is mine, I want it, and no noise about it, if I spend it to-morrow.' Ware said, the old man and Madison reprimanded him for making the offer, saying, that the rest of the children or girls had theirs, and this was his. He said he did transfer it, but that he was to have therefor the Farnham and Lull lot. Ware told me that he had once looked at the land, and did not want it. I will not be positive that this was after the transfer of the judgment. I know the Lull and Farnham lot; the Lewis lot and Draper lot—know all. I do not know what improvements were then made." (Cross-examined.) "My impression is, that when Ware said he had looked at Lull and Farnham land, it was before the trade, whilst they were bargaining about it. Ware was to give Kennedy the bond and a yoke of oxen, and Kennedy was to give him something

back, but can't say how much. Ware told me that he had transferred the note for this land. Heard something about a $42 note."

*John Galbraith* testified as follows: "There was a trial here, on a scire facias on the judgment, No. 105, August term, 1836, for the use of the executors of Isaac Kennedy, deceased. Ware was called as a witness, by the defendant in that suit. He stated that the consideration of the note was the land, (one hundred and ninety acres of land that belonged to Isaac Kennedy.) He said the note was given to him as part of the $500 that was given as his wife's portion. Charles was acting as the agent, and under an assignment from the old man, and was to pay each of the girls $500. It was assigned to him (Ware) as part of that $500. The $500 was paid to Avery in that land; this note was for the balance. He said he gave it back to Mr. Kennedy for a piece of land. Ware said in substance, that Kennedy said he intended this note as part of the $500 he intended for his wife."

*Barnes Greely* called again: "Part of the land that Ware is on is on the Lull tract. The Lull and Farnham tract contains one hundred acres."

The will of Isaac Kennedy, in which are the following devises:

"Catharine my daughter, my second daughter, as she by her husband Robert Campbell has had $500 handed over by Charles, yet my will and desire is, that she and her heirs should have the Farnham fifty acres and one half of the Lull place, which will be seventy-five acres of land on the reviewed road, which shall be for her and her children, their natural lives, and a gold string of beads for her to remember her father by, as soon as my executors can get them. Polly Esther has had by her husband, Samuel Ware, something like $211; besides Polly Esther's outset to keep house. It is my will and desire Polly Esther should have one half of the Lull place, and fifty acres of the Draper place, where Lewis lives, which will make seventy-five acres of land for her and her children, and her heirs during their natural lives, and a gold string of beads to remember her father by."

Plaintiff's points:—

1st. That by virtue of the assignment to Charles H. Kennedy, plaintiff had a vested interest in the judgment against Calvin F. Avery; and if the jury believe that the subsequent assignment thereof by plaintiff to Isaac Kennedy, was made in pursuance of an agreement or understanding between said Isaac and plaintiff, that said Isaac would make to plaintiff a title to the tract of land called the Lull and Farnham tracts, plaintiff is entitled to recover the amount due on the judgment when assigned by him to Isaac, with interest from the date of his assignment.

2d. That the devise of Isaac Kennedy of seventy-five acres of land to the wife of plaintiff, "for her and her children during their natural lives," and a string of gold beads, cannot operate as an extinguishment of plaintiff's right to recover on the agreement or promise set forth in his declaration; if the existence of such agreement has been proved.

Defendants' points:—

1st. That if the jury believe from the evidence that the note or judgment against Avery was in fact the property of Isaac Kennedy, and assigned to him as an advancement or gift to his daughter Polly Esther, and it was given up by plaintiff to Isaac Kennedy, under a promise or declaration that he would make a disposition of land instead of it, for the benefit of his daughter, it is but an exchange of one gift for another, and is to be referred to a disposition either by advancement or by his will, and the plaintiff cannot recover in this action on the alleged promise.

2d. That a parol gift or a parol contract for land, particularly between a father and his children, in order to be binding, must be distinctly and clearly proved, both as to the quantity of land, and the boundaries and the amount to be paid, and the terms of payment.

## Charge of the Court.

To plaintiff's points.

1st. The law is, as here claimed by plaintiff; and if you find the facts so from the evidence, the plaintiff will be entitled to recover the amount of the money assigned by him to the testator, with interest, if there be nothing else in the way to prevent it. But if you also find that the testator devised to plaintiff (or to plaintiff's wife, if that was the agreement and understanding) the land he intended and agreed to convey for the assignment, and the plaintiff has received and occupied it, then the plaintiff cannot recover.

2d. To this point we say, if you believe that this seventy-three acres so devised by the will of the testator is the whole of the land so intended and understood by testator and plaintiff, which should be given for the assignment, and that the understanding was that the land should be given to him for the use of his wife and that of his children, then that devise is an extinguishment of plaintiff's right to recover, or rather it is a compliance with and performance of the contract, and the plaintiff cannot recover. If it is not the whole, then it is not such a compliance. If it is only of a part, and received and occupied by plaintiff, it is a compliance; a performance of the contract pro tanto; (explaining) and its relative value, taking the whole value to be the amount of the

money assigned, should be deducted out of or allowed as a credit on the whole amount, and plaintiff would be entitled to recover the remainder, or balance, if not otherwise prevented.

To defendants' points.

1st. To defendants' first point we answer as requested, in the affirmative; the facts are for you.

2d. To the defendants' second point, as an abstract principle of law, we also assent; but we must say that we do not see its application strictly to this case.

To which charge plaintiff and defendants excepted.—Verdict for the plaintiff for $375 65.

Errors assigned:—

1st. The court erred in their answer to the plaintiff's 1st and 2d points, and in laying down the rule of computation of damages.

2d. The court erred in their answer to defendants' 2d point, in deciding that the law as prayed for did not apply to the case.

*Galbraith*, for plaintiff in error, cited on the first point Tidd on Awards, 16; Chitty on Contracts, 615. As to the measure of damages, 3 Watts & Serg. 563—566; 2 Watts, 433. On the second point, 5 Watts, 368; 10 Watts, 195, 203; 3 Penna. Rep. 358, 359; 10 Watts, 54.

*Babbit*, contrà, 7 Cowen, 681; Chitty on Contracts, 51.

The opinion of the court was delivered by Gibson, C. J.

An equitable assignment of a chose in action is said by Mr. Butler (Co. Lit. 232 b, note 1) to be a declaration of trust with an agreement to permit the assignee to sue in the assignor's name. The contract being consequently executory, must have a consideration to support it, without which equity would no more execute it than the law would make the breach of it a subject of compensation. It was indeed said, in Carteret *v.* Paschall, 3 P. Williams, 199, that a parol contract might be good without consideration, though not to bar a wife's right of survivorship by the assignment of her chose in action. But the law is decidedly settled otherwise by Robinson *v.* Vavasor, Vin. Abr. tit. *Assignment*, D., case 29; Crouch *v.* Martin, 2 Vern. 595; Suffolk *v.* Greenville, 3 Chan. Rep. 90; Whitehill *v.* Wilson, 3 Penna. Rep. 413; and a dictum of Lord Keeper Bridgeman, 2 Freem. 145. What is the proper consideration? Consanguinity is sufficient to raise a use; but that it is not a consideration for an assignment like the present, is shown by Bret *v.* J. S. and wife, Cro. Eliz. 755, where it was held that natural affection is not a sufficient consideration for an assumpsit

to ground an action. Harford *v.* Gardener, 2 Leon. 30; Best *v.* Jolly, 1 Sid. 38, and Butcher *v.* Andrews, Carth. 446, are to the same effect. It was indeed said by Lord Mansfield and Mr. Justice Buller, in Hawkes *v.* Sanders, Cowp. 289, and repeated by Lord Mansfield in Freeman *v.* Fenton, Cowp. 544, "that a legal or equitable duty is a sufficient consideration for an actual promise; that when a man is under a moral obligation which no court of law or equity can enforce, and he promises, the honesty and rectitude of the thing is a consideration:" And it may be said that a man is morally bound to nourish and provide for his own children. But it is shown by a masterly review of all the cases in a note to Wennall *v.* Adley, 3 Bos. & Pull. 249, that Lord Mansfield's principle was intended for cases in which the promisor has received an actual benefit, but is protected from liability for it by some statute or stubborn rule of law. All the cases put by him for the sake of illustration are certainly of that stamp. "Indeed Lord Mansfield appears," adds the annotator, "to have used the term moral obligation, not as expressive of any vague or undefined claim arising from nearness of relationship, but of those imperative duties which would be enforceable at law were it not for some positive rule which, with a view to general benefit, exempts the party in that particular instance from legal liability." And this restriction of the principle which reconciles it to the older authorities, is sanctioned by Mills *v.* Wyman, 3 Pick. 207, in which the court refused to enforce a written promise to pay a son's expenses incurred when sick among strangers. I am aware that the principle was ruled differently by this court in Wentz *v.* Dehaven, 1 Serg. & Rawle, 312, where a parol relinquishment of a mortgage debt, in favour of a child, was held good without consideration, because, though unsealed, it was written: a reason that was rejected in Whitehill *v.* Wilson already quoted, but in which my own suggestion of a reason for the decision, that the relinquishment was for natural love and affection, was no better. Wentz *v.* Dehaven is not to be sustained on any ground. Every man is indeed under a moral obligation to maintain and provide for his offspring; but it is an obligation which springs from the dictates of his nature; not from a benefit received from the parent, or a prejudice suffered by the child. What then was the consideration of the assignment before us?

Kennedy, whose executors are sued on a parol agreement to convey land to his son-in-law, Ware, assigned by the instrumentality of his son, to whom he had conveyed his estate in special trust, a judgment against Avery in advancement of his daughter, Ware's wife. The trust being subsequently revoked and the estate re-conveyed, Kennedy promised to convey to Ware a particular lot of land in lieu of part of

the judgment which was re-assigned to him.   The judge charged, that the promise would sustain the action; but according to the cases brought into view, the first assignment of the judgment, being in consideration of natural love and affection, was void; and as Ware had nothing in it to give back, Kennedy's promise to convey on the foot of it was also void.    The partial rescission of the first assignment was not the compromise of a contested right; and there was therefore no consideration for the agreement on that or any other ground.

Judgment reversed.