## LEHIGH V. R. CO. v. JAMES WOODRING.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 10, 1887—Decided March 21, 1887.

An assignment of his wages by a laborer, executed when he is not engaged in, and not under contract for, the employment in which the wages are to be earned, is too vague and uncertain to be sustained as a valid assignment and transfer of property: Jermyn v. Moffitt, 75 Penn. St. 403, followed.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 210 January Term 1887, Sup. Ct.; court below, No. 22 December Term 1886, C. P.

In an action brought before a justice of the peace by James Woodring against the Lehigh Valley R. Co., to recover wages earned, on October 18, 1886, the justice gave judgment for the plaintiff, when the defendant appealed. On the trial in the Court of Common Pleas, December 8, 1886, the jury returned a special verdict, finding as follows:

That during September and October, A. D. 1886, James Woodring worked at manual labor for the Lehigh Valley Railroad Company twenty-six days, and earned thirty-two dollars and sixty-two cents wages, which was due and payable October 8, 1886; that prior to October, 1886, either October 6th or 7th, Eliza McDermott served upon the Lehigh Valley Railroad Company the following notice and copy of power of attorney:

Statement of Facts.

" To the Lehigh Valley Railroad Co.:—You are hereby notified that I have an assignment from James Woodring of the wages due him from you, a copy of which assignment is hereto annexed; and you are notified not to pay the same to said James Woodring or to any other person for him, as I shall look to you for the same." Dated, " Phillipsburg, New Jersey, ——— day of ——— " and signed, " Eliza McDermott."

The following is a copy of the power of attorney:

Know all men, by these presents, that I, James Woodring, of the town of Phillipsburg, county of Warren, and state of New Jersey, in consideration of groceries and provisions furnished me and my family by Eliza McDermott, of Phillipsburg aforesaid, do hereby constitute and appoint Eliza McDermott my true and lawful attorney, for me and in my name, and for the use and benefit of the said Eliza McDermott, and at her expense, to receive, collect, sue for, and receipt for all wages or moneys due, or that may hereafter become due me from ———, and I do hereby authorize and empower the said Eliza McDermott to fill up this power of attorney with the name of any person, firm or corporation for whom I may be working at any time during the time I am receiving groceries and provisions as aforesaid from the said store of the said Eliza McDermott; or, if I should quit dealing with the said Eliza McDermott, leaving any balance due or owing by me to her, hereby declaring this power of attorney shall be operative and have good effect to whom presented, who owes me for wages for labor at any time during the period I may be dealing with or owing the said Eliza McDermott, and I hereby declaring that this power of attorney is, for the considerations above mentioned, by me irrevocable.

In witness whereof I have hereunto set my hand and seal, this seventh day of September, A. D. 1885.

JAMES WOODRING.    [SEAL.]

That on October 8, 1886, the pay-day of the defendant, he applied to the paymaster for his money and was informed that the above power of attorney had been handed in against him and the paymaster said that he could not pay him.

That on October 8, after the above information from the paymaster, Woodring served a notice upon the said paymaster as follows:

Opinion of Court below.

*To the Lehigh Valley Railroad Company:*

Please take notice that I claim all monies due me from your company and demand that they be paid to me only. No one has any legal right to receive them except myself.

Respectfully,

EASTON, Oct. 8, 1886.          JAMES WOODRING.

That after October 8, 1886, and after the service of the last named notice, the defendant paid the amount in controversy to Eliza McDermott.

That on the day of the execution of the said power of attorney, viz.: September 7, 1885, the plaintiff opened an account with Eliza McDermott for groceries, which was continued until December 28, 1885, when the balance due for groceries was seventy-three dollars and four cents; that Woodring then removed from New Jersey to South Easton, Pa., and has not since dealt with Eliza McDermott, and made no payments on account; the only credit since then being the thirty-two dollars and sixty-two cents received from the defendant.

And the jury further find that on September 7, 1885, James Woodring was not employed by the Lehigh Valley Railroad Company, nor under any contract of employment with them, and that he did not enter their service until September, 1886.

And the jury further say that they are ignorant whether the plaintiff, upon foregoing facts, is in law entitled to recover. If the court shall be of the opinion that the law is with the plaintiff, then we find in favor of the plaintiff the sum of thirty-two dollars and sixty-two cents with interest from October 8, 1886, and judgment to be entered in his favor against the defendant for that amount. But if the court should be of the opinion that the law is with the defendant, then judgment to be entered in their favor.—

On December 13, 1886, the court, W. W. SCHUYLER, P. J., delivered the following opinion:

The only controverted question raised by the special verdict is this: Can a person not engaged in any employment for another, and not under contract for such employment, for a valuable consideration make a valid assignment of all wages which he may earn in the future, without limit as to time or

amount? The learned counsel for the defendant contends that such an assignment will be enforced in equity.

The two authorities relied on as sustaining this position are East Lewisburg L. & M. Co. v. Marsh, 91 Penn. St. 96, and Ruple v. Bindley, Idem, 296. In the first of these cases, Marsh, who was at that time engaged in manufacturing agricultural implements, assigned as collateral security to the East Lewisburg Lumber Co., the proceeds of future sales of said implements during the then current year, and it was held that, although the proceeds of sale assigned had no actual existence and rested in expectancy only, the assignment was valid. It will be noticed, however, that the thing assigned was individuated, and was the fruit of an employment existing at the time of the assignment.

In Ruple v. Bindley, Ruple was under contract to put up the stairs in a building in process of erection by Bindley, and not having the means to fulfill his contract, one Lewis agreed to advance the same. To secure Lewis, Ruple gave him an order on Bindley for $104, the amount advanced by Lewis, to be paid out of his wages when the stairs were finished. This was held to be a valid assignment of the $104. But here again the thing assigned was individuated, and was, besides, the fruit of an employment under contract at the time the order was given. No argument is needed to show that these cases fall very far short of sustaining the broad position the defendant is compelled to assume in the case at bar. Of greater force and more directly in point is Mulhall v. Quinn, 1 Gray 105, cited and recognized in East Lewisburg Lumber Co. v. Marsh, *supra*. In this case there was an assignment of all claims and demands which the assignor had or might have against the city of Boston for money due or to become due for services rendered to the city, and the assignment was accompanied by an irrevocable power of attorney authorizing the assignee to draw the money assigned. Notice of the assignment was given to the city, but the city did not accept or undertake to pay the assignee. At the time of the assignment the assignee was not employed by the city or under any contract for such employment, but he had been employed prior thereto and became so subsequently. The contest was between the assignee and the plaintiff in a trustee attachment for the

benefit of all creditors. "Under these circumstances," says SHAW, C. J., "the court are of opinion that beyond the earnings due at the time of the assignment there was no valid assignment which can be set up to defeat the trustee attach- ment, and that the earnings of the assignor between the assignment and the attachment did not vest in the assignee. The future earnings constitute a mere possibility, coupled with no interest. There was no subsisting engagement under which wages were to be earned, and it depended altogether upon a future engagement whether anything would ever become due. None of the cases go so far as to hold that the mere possibility of being again employed by the city, and of earning wages under that employment at a future time, is capable of being assigned. A power of attorney, although irrevocable in terms, does not amount to an assignment, when no assignable interest exists at the time."

Still more to the point is the language used in Jermyn v. Moffit, 75 Penn. St. 402, where MERCUR, J., says: "We, however, are clearly of the opinion that an assignment, like the present, which professes to transfer a debt to arise for wages not yet earned, against any person by whom the assignor may thereafter be employed, although followed by a subse- quent notice of the assignment to such an employee, is insuffi- cient without acceptance to make a valid transfer of the debt against the employer." In Ruple v. Bindley, *supra*, TRUN- KEY, J., says after quoting this same language, that, "the soundness of this principle is unquestioned." In this connec- tion it is only necessary to call attention to the fact that the jury in the case at bar do not find that the defendant accepted the order given by the plaintiff in favor of Mrs. McDermott, and in the absence of such finding the legal inference is that the order was not accepted.

But aside from these authorities, and aside from the ques- tion of acceptance, we think all assignments such as the one in controversy here, should be declared void as being against the principles of public policy. The present assignment is by a day laborer, in consideration of groceries and provisions fur- nished him and his family, and it covers all wages, past and future, due and to become due, to the assignor from any per- son, firm or corporation, whatever, so long as the assignee's

claim remains unpaid.    True, in the present case, the assignee's claim amounts to but $32.62, but the principle would be the same if the claim were ten or a hundred times that sum. Nor does the fact that the assignment was in consideration of groceries and provisions furnished the family of the assignor give the transaction special character.    A money consideration would, in contemplation of law, be just as effectual.    Nor, if the transaction be fair, need the price paid be a full equivalent for the wages assigned.

Should the law be declared to be that such an assignment is valid, it is not difficult to see that it would open the door to improvidence and profusion on the part of the assignor, and in the end to utter and hopeless poverty.    Take the case of any wage earner, or salary earner, or any one who is compelled to work for a living, for in either case the principle is the same. He conceives himself to be in want of money, whether for necessaries or luxuries makes no difference.    He finds that he can raise the coveted money by assigning his future earnings to become due from any and every source.    No purchaser offers for his wages in any existing employment, for he may quit that employment at any time and thus render worthless his assignees' security.    He therefore, under the pressure of his supposed wants, pledges his whole money-earning power for a price.    Presently the money or provisions, or what not, thus acquired are all gone.    They may have been recklessly squandered ; they may have been doled out only for the very necessaries of life, during a period of sickness or other misfortune ; it's all the same.    He is not only penniless, but he has incurred a debt which it may require months and even years to work off.    Turn where he will, go where he will, his creditors may follow him and sweep away every dollar of his earnings until his debt is paid.    In the meantime his children are clamoring for bread.

Or there may be a whole community of wage earners thus situated.    They may be entirely honest.    They may have stout hearts and willing hands.    The harvest may be plenty and the laborers few.    But how can men labor for that which satisfieth not, and their families starving before their eyes?    In addition to all this, the danger to society from such a condition of things would be both grave and alarming.    It is true

generally, as argued by the learned counsel for defendant, that persons *sui juris* may make their own contracts, but the rule has its exceptions. A man may not sell himself into slavery. Nor is the doctrine for which I have been contending obnoxious to the justly severe criticism of Mr. Justice GORDON in Godcharles v. Wigeman, 113 Penn. St. 431, directed against certain legislation in the supposed interest of the laboring classes, to the effect that " it is an insulting attempt to put the laborer under a tutelage which is not only degrading to his manhood, but subversive of his rights as a citizen of the United States." When the court say to the laborer that he shall not beggar himself and family by making merchandise of what is virtually his entire wage-earning power, they merely extend to the laborer the same rule which is applicable to the judges themselves, and to the officers of our army and navy; for neither the salaries of the judges, nor the pay of these officers, may be assigned, either by the party or by operation of law ; and for the same reason, to wit : that it is against public policy that they should be : 2 Story Eq. Jur., § 1040.

And now, December 13, 1886, judgment is entered on the verdict in favor of the plaintiff.

Judgment having been entered in favor of the plaintiff for $32.62, the defendant company took this writ and assigned for error :

1. The entering of judgment in favor of the plaintiff in the case stated.

2. The decision of the court that the power of attorney and assignment of the plaintiff to Mrs. McDermott of his wages thereafter to be earned was inoperative and void, and that the plaintiff was entitled to judgment notwithstanding the defendant had paid the wages to the assignee before the suit was brought.

3. The refusal to enter judgment on the case stated for the defendant.

*Mr. R. E. Wright* and *Mr. B. F. Fackenthall* (with them *Mr. H. S. Drinker*), for the plaintiff in error :

1. The name of the employer is left blank in the power of attorney ; it was expressly agreed that it should be applicable to any future employer, whoever he might be ; and it was to

apply to future wages due from a party in whose employ he was not engaged at the time of the contract. The power of attorney was therefore in terms an assignment applicable to wages earned while working for the defendant. And it was irrevocable, first, being for a valuable consideration, the furnishing of groceries on credit; and second, it was made irrevocable in terms, and being *inter partes* and during life makes it so: Hunt v. Rousmanier, 8 Wheat. 174, 202, 206; Blackstone v. Buttermore, 53 Penn. St. 266; Hartley & Minor's App., 53 Idem 212; Bancroft v. Ashhurst, 2 Gr. 513; Frederick's App., 52 Penn. St. 338.

2. Equity will support assignments of contingent interests and expectancies—things which have no present actual existence, but rest on mere possibility—not, indeed, as a present positive transfer, operative at present, for that can only be of a thing *in esse*, but as a present contract to take effect and attach as soon as the things come *in esse*. An assignment for a valuable consideration of demands having at the time no actual existence, but which rest in expectancy only, is rated in equity as an agreement, and takes effect as an assignment when the demands intended to be assigned are subsequently brought into existence: East Lewisburg L. & M. Co. v. Marsh, 91 Penn. St. 96; Ruple v. Bindley, Idem 296; Caldwell v. Hartupee, 70 Idem 74; Strausser v. Taylor, 11 Luz. L. Reg. 287; Bittenbender v. Railroad Co., 40 Penn. St. 270. In our case the debt was contracted after the assignment was made, so that the agreement is not obnoxious to the rule that a pre-existing debt is in many cases not a valuable consideration: Bayler v. Commonwealth, 40 Penn. St. 37; 2 Lead. Cas. in Eq., 4th Amer. ed. 1606, quoting Wilson's Estate, 2 Penn. St. 325.

We submit that Jermyn v. Moffitt, 75 Penn. St. 399, establishes (1) That an assignment of unearned wages made upon a valid consideration is good; (2) That it makes no difference that the unearned wages subsequently arising grow out of an employment that did not exist at the time of the assignment; (3) That while where the assignment is of the entire wages falling due, mere notice of the assignment to the employer is sufficient to make him liable to the assignee; yet when the assignment is partial he cannot be charged without

an acceptance. In our case the employer recognized the assignment and actually paid the debt to the assignee.

3. In other states the decisions are in full accord with the Pennsylvania doctrine on the subject: Field v. The Mayor of New York, 6 N. Y. 179; Lannan v. Smith, 7 Gray 150; Bracket v. Blake, 7 Met. 335 (41 Amer. D. 442); Weed v. Jewett, 2 Idem 608 (37 Amer. D. 115); Emery v. Lawrence, 8 Cush. 151; Gardner v. Hoeg, 18 Pick. 168; Boylan v. Leonard, 1 Allen 407.

4. We admit that there is some reason and authority for the position that an assignment of unearned wages or salary is valid only when the employment or relation out of which they are to arise is in existence at the time of the assignment, or in reasonable contemplation: Mulhall v. Quinn, 1 Gray 105 (61 Amer. D. 414); Farnsworth v. Jackson, 32 Me. 419. But this doctrine has not been recognized in Pennsylvania, and the ruling in Jermyn v. Moffit, *supra*, is quite to the contrary.

5. The facts found by the special verdict amount to an acceptance of the assignment by the defendant company: Saylor v. Bushong, 100 Penn. St. 23; First N. Bank v. McMichael, 106 Idem 460; Seventh N. Bank v. Cook, 73 Penn. St. 483. An acceptance in writing of a "bill of exchange, draft or order," as required by the act of May 10, 1881, P. L. 17, may be waived by the acceptor, and when he has paid the bill, draft or order, the drawer cannot complain and set up the statute. Besides, it is a question whether the statute applies to an assignment or letter of attorney coupled with an interest, and whether it is not to be confined to the language, "bill of exchange, draft or order."

*Mr. Russell C. Stewart* for the defendant in error.

When Woodring executed the letter of attorney, on September 7, 1885, he was not employed by, nor was he under any engagement or contract to work for, the Lehigh V. R. Co. From this state of facts the court below was right in holding that the assignment to Mrs. McDermott could not be enforced in equity. A power of attorney, though irrevocable in its terms, does not amount to an assignment when no assignable interest exists at the time: Mulhall v. Quinn, 1 Gray 105 (61 Amer. D. 414); Herbert v. Bronson, 125 Mass. 475;

Houtly v. Tapley, 2 Gray 566 ; East Lewisburg L. & M. Co. v. Marsh, 91 Penn. St. 96 ; Ruple v. Bindley, Idem 296 ; Jermyn v. Moffitt, 75 Penn. St. 400.

The case of Mulhall v. Quinn, *supra*, is quoted with approval in East Lewisburg L. & M. Co. v. Marsh, 91 Penn. St. 96, as also was the case of Field v. Mayor of N. Y., 6 N. Y. 179. In the latter case Bell was engaged at the time of the assignment in printing under various contracts for the city of New York. The court merely decided that courts of equity will support assignments of things which have no present actual existence but rest in possibility only, provided the agreements are fairly entered into and it would not be against public policy to uphold them. This principle is fully elaborated in our own late case of Collins' App., 107 Penn. St. 590.

Where there is a possibility of future earnings, coupled with an interest in a contract of employment, in such case, when the earnings accrue, the courts will enforce assignments of them, for the reason that the natural and legitimate fruit of the contract and work under it will be future earnings, which to a certain extent may be specified and individualized : Holroyd v. Marshall, 10 H. L. 209 ; Belding v. Reed, 3 Hurl. & C. 961.

The very cogent reasons resulting from public policy, as they appear in the opinion of the court below in this case and in Fairgrieves v. Lehigh Nav. Co., 2 Phila. 182, should influence this court in refusing to extend the operation of equity powers beyond what has been decided in Mulhall v. Quinn and Jermyn v. Moffitt, *supra*.

PER CURIAM :

The learned judge committed no error in entering judgment in favor of the plaintiff below, on the special verdict. The attempt was to assign that which had no existence, either substantial or incipient. There was no foundation or contract on which an indebtedness might arise. It was the mere possibility of a subsequent acquisition of property. This is too vague and uncertain. It cannot be sustained as a valid assignment and transfer of property : Jermyn v. Moffitt, 75 Penn. St. 402.

Judgment affirmed.