138 612
f151 ¹544

FISCHER *v.* UNION TRUST CO.

1. GIFTS—CONVEYANCES—DELIVERY.

After a deed of gift was signed and acknowledged, the grantor made manual delivery of it to the grantee, who took it and handed it to her brother, evidently to be kept for her. He put it away without recording it. *Held,* that the delivery was complete.

2. SAME — AGREEMENT BY DONOR TO PAY MORTGAGE — ENFORCEMENT.

Where the only consideration for a deed by a father to his daughter was love and affection, the daughter could not enforce a provision in the deed that the grantor would pay certain mortgages on the property conveyed when the same became due, and therefore his failure to do so, resulting in an enforcement of one of them by foreclosure, gave her no claim against the estate of her father based on the appropriation of her property to pay the mortgage.

Error to Wayne; Hosmer, J. Submitted June 9, 1904. (Docket No. 6.) Decided December 30, 1904.

Bertha Fischer presented a claim against the estate of William Fischer, Sr., deceased, for damages for an alleged breach of a covenant in a deed. The claim was allowed by the commissioners, and the Union Trust Company, administrator, appealed to the circuit court. There was judgment for claimant on a verdict directed by the court, and defendant brings error. Reversed.

On December 21, 1895, William Fischer, Sr., conveyed by warranty deed certain property in the city of Detroit to the claimant, Bertha Fischer, his daughter, who had been incompetent for a number of years, and so remains, and is at present at the retreat for the insane at Dearborn.

The deed was a warranty deed, in the usual form, with a covenant against all incumbrances, excepting two mortgages, which the grantor "agrees to pay when the same become due." The land described in the deed comprised the homestead where the father and daughter lived, and the adjoining lot, with the house thereon. Mr. Fischer, after signing and acknowledging it, handed it to claimant, saying, "Here is a deed of the Jefferson and Larned street property." He said it was a "nice Christmas present." She took it and read it. One of her brothers gave her a dollar, which she gave to her father, who took it. She then handed the deed to her brother Alexander, and asked him to take care of it. He put it in his safe, and did not record it until June 30, 1902, about a year after the grantor's death, and 6½ years after its date. The reason given by the son for not recording is that there were unpaid taxes, in consequence of which, under the statute, it could not be recorded.

After the delivery of the deed, both grantor and grantee continued to live together on part of the property so conveyed. Mr. Fischer continued until his death to manage and control it, and to receive the rents therefrom, just as he had done before the giving of the deed. During that time he took care of his daughter the same as before. At the time of the execution of the deed, the grantor was considered by his sons to be worth about $50,000. He had no debts except the two mortgages, one of $3,000 and the other of $5,000. If he was then worth that amount, the larger part of it was in some way disposed of in his lifetime. The $3,000 mortgage was foreclosed for nonpayment, and satisfied out of part of the property conveyed. The claim at bar is based upon this appropriation of her property to pay the mortgage.

*Russel & Campbell*, for appellant.

*Alfred J. Ducharme* (*John C. Donnelly*, of counsel), for appellee.

Grant, J. (*after stating the facts*). 1. The facts and circumstances of the delivery of the deed are not in dispute. Counsel differ only in the conclusion to be drawn from them. We think that the conceded facts show a delivery. After the deed was signed and acknowledged, the grantor made manual delivery of it to the grantee. She took it and handed it to her brother, evidently to be kept by him for her. The grantor reserved no control over it, and retained no right to withdraw or cancel it. He never attempted to. Under those circumstances the delivery was complete.

2. The meritorious question in the case is: Was the claimant in position to enforce the executory contract in the deed against her father while living, and to enforce it against his estate now that he is dead, or to recover damages at law for nonperformance? To say that the one dollar was the real, or such valuable consideration as would of itself sustain a deed of land worth several thousand dollars, is not in accord with reason or common sense. The passing of the dollar by the brother to his sister, and by her to her father, was treated rather as a joke than as any actual consideration. The real and only consideration for the deed and the agreement, therein contained, to pay the mortgages, was the grantor's love and affection for his unfortunate daughter, and his parental desire to provide for her support after he was dead. The consideration was meritorious, but is not sufficient to compel the performance of a purely executory contract. The deed was a gift, and the gift was consummated by its execution and delivery. The title to the land, subject to the mortgages, passed as against all except the grantor's creditors. The gift was expressly made subject to the mortgages, and coupled with it was a promise to pay them. This promise has no additional force because it is contained in the deed. It has no other or greater force than would a promise by him to pay mortgages upon her own land, or to pay her $8,000 in money, or his promise to her evidenced by a

promissory note for a like amount, and given for the same purpose and the same consideration.

" The doctrine of meritorious consideration originates in the distinction between the three classes of consideration on which promises may be based, viz., valuable consideration, the performance of a moral duty, and mere voluntary bounty. The first of these classes alone entitles the promisee to enforce his claim against an unwilling promisor; the third is for all legal purposes a mere nullity until actual performance of the promise.

" The second, or intermediate class, is termed the meritorious, and is confined to the three duties of charity, of payment of creditors, and of maintaining a wife and children; and under this last head are included provisions made for persons, not being children of the party promising, but in relation to whom he has manifested an intention to stand in loco parentis in reference to the parental duty of making provision for a child.

" Considerations of this imperfect class are not distinguished at law from mere voluntary bounty, but are to a modified extent recognized in equity. And the doctrine with respect to them is that, although a promise made without a valuable consideration cannot be enforced against the promisor, or against any one in whose favor he has altered his intention, yet if an intended gift on meritorious consideration be imperfectly executed, and if the intention remains unaltered at the death of the donor, there is an equity to enforce it, in favor of his intention, against persons claiming by operation of law without an equally meritorious claim." Adams on Equity (8th Ed.), 97.

This court held that a promissory note given by a father to his son, intended as his share of the estate, could not be enforced against the estate. *Conrad* v. *Manning's Estate*, 125 Mich. 77. The opinion in that case, written by my Brother MOORE, cites many authorities which need not be recited here. *Duvoll* v. *Wilson*, 9 Barb. 487, is exactly in point, both in the facts and conclusion reached.

" The consideration of natural love and affection is sufficient in a deed; but a mere executory contract, that requires a consideration, as a promissory note, cannot be supported on the consideration of blood or natural love and

affection—there must be something more, a valuable consideration, or it is not good and cannot be enforced at law, but may be broken at the will of the party." *Pennington* v. *Gittings*, 2 Gill & J. 208.

See, also, *West* v. *Cavins*, 74 Ind. 265; *Hadley* v. *Reed*, 12 N. Y. Supp. 163.

The learned counsel for the claimant cite numerous authorities, but we do not think them applicable to this case.

In *Ferguson's Appeal*, 117 Pa. St. 426, a father had deeded to his daughter a lot of land according to a plat which called for a street thereon. The rights of the grantee in the street were the subject of the suit. One of the defenses set up was, the conveyance was voluntary. To this contention the court replied that the conveyance was fully executed. That decision is based upon the obvious principle that, when a grant of land or gift of personalty is consummated by a deed of the land or delivery of the personalty, the grantee or promisee succeeds to all the rights in the property which the grantor or promisor had. Third parties, except creditors, cannot contest the consideration.

So, where the contract of conveyance is fully executed, the grantee may maintain a suit in equity to correct the description in the deed. *Hutsell* v. *Crewse*, 138 Mo. 1. In that case the father deeded to his minor child the land for the same purpose as did Mr. Fischer in this case. He had also deeded certain other lands to his other children. His wife died, after which he remarried. After his death, suit was brought against the widow and her children to reform the deed. The basis of the decision is that the contract was executed, the title had passed, and the land was susceptible of identification aliunde. *Pickett* v. *Garrard*, 131 N. C. 195; *Mason* v. *Moulden*, 58 Ind. 1; *Brown* v. *Whaley*, 58 Ohio St. 654; and *Ohmer* v. *Boyer*, 89 Ala. 273—are similar cases.

In *Lawrence* v. *McCalmont*, 2 How. 426, the consideration was the sum of $1 and the extension of credit, which was held sufficient to sustain a contract of guaranty for the payment of accounts.

In *Harvey* v. *Alexander*, 1 Rand. 233, the consideration was natural love and affection. Creditors attacked the conveyance on the ground of fraud. It was held that the deed was not per se voluntary. The question in the case was whether it was competent to show that full value was paid by the grantee. The holding of the case clearly is that love and affection would not be a sufficient consideration to sustain the deed.

In *Ross' Appeal*, 127 Pa. St. 10, a man gave a note of $5,000 to a trustee for his children named therein, due five years after date, with interest. It was sought to enforce the note after his death, and the transaction was sustained as an executory gift inter vivos. That is clearly in conflict with *Conrad* v. *Manning's Estate*, supra, unless it can be distinguished on the ground that in the *Ross Case* the payee was a trustee. *Conover* v. *Brown*, 49 N. J. Eq. 156, is in direct conflict with *Conrad* v. *Manning's Estate*, supra.

If claimant had no promise which she could specifically enforce against her father, or upon which she could base a claim for damages, it follows that she is not entitled to subrogation as against her father or his estate. A void promise cannot be made the basis of subrogation against an unwilling promisor. The same reason that is a bar to the one claim is also a bar to the other. However commendable was the promise of Mr. Fischer to give a larger share of his property to his unfortunate daughter than to his other children, it was a promise absolutely null and void until it became merged in his voluntary execution of it. His promise to pay was, for some unknown reason, left unexecuted. She paid no valuable consideration for the promise, and cannot, therefore, enforce it. It is, however, urged that Mr. Fischer's primary liability to pay the debt was unaffected by the deed of gift, and, as the subject of the gift has paid the debt, therefore claimant is entitled to subrogation. This claim cannot be maintained upon any other theory than that there was a valid gift of the entire land free from all incumbrances. If the prom-

ise made by Mr. Fischer to his daughter to pay these incumbrances had been omitted from the deed, clearly he would have been under no obligation as to her to pay them, although the mortgagee could enforce his (Fischer's) primary liability. In such case the gift would have been only that of the equity of redemption. She would not in that event, by paying the mortgage, have been in position to recover the amount from her father or from his estate, for she would have taken title subject to the mortgage.

It is urged that "the father is already obligated to pay the debt [the debt secured by the mortgage], so that the question is not whether he may agree to pay it, but it is whether he may make a gift of his property without affecting this already existing agreement to pay it." If this logic is sound, it must, in my judgment, follow that every grantee who buys land subject to a mortgage can buy up the note evidencing the debt and sue the mortgagor therefor. This, evidently, is not the law. When a grantee purchases subject to a mortgage which is expressly exempted from his covenant of warranty, his undertaking with his grantor is to pay the mortgage if he desires to save his land. The amount of the mortgage is deducted from the purchase price. When such grantee pays the mortgage, he pays only what he, as against his grantor, has assumed to pay. One by a deed of gift certainly can acquire no more than one acquires by deed of purchase. The conveyance subject to the mortgage entails upon both grantees the same obligation to pay the mortgage, so far as the grantor is concerned. No arrangement between the grantee and the grantor can, of course, change the liability of the grantor and mortgagor to the mortgagee. His already " existing agreement " remains the same in either case, and is always unaffected by any subsequent transfers of the land. But where he sells and conveys land by deed, subject to a mortgage, the primary obligation to pay the mortgage, as between the grantor and grantee, rests upon the grantee. If the mortgagee abandons his security and sues upon the note or obligation to which the

mortgage is collateral, and by his suit compels payment, such grantor (the mortgagor) is clearly entitled to recover from his grantee the amount thereof, and should be subrogated to the rights of the mortgagee against the land. Our attention has been called to no case where a mortgagee has pursued so extraordinary a course. The universal course in such cases has been to foreclose the mortgage, sell the land, and obtain a personal decree against the mortgagor for the deficiency.

If Mr. Fischer had voluntarily paid the mortgages, he would then simply have carried out his nonenforceable contract and have completed his gift, as, perhaps, he then intended to do. For some reason, perhaps a good one, he chose not to pay them. A void promise is no more effective than no promise, and the void promise in the deed had no more effect than if it had been omitted therefrom. If it is void for one purpose, it is void for all, and cannot be made available, either directly or indirectly. Only performance of the promise can be of any avail to the claimant.

A gift of personalty can be consummated only by an unconditional delivery of the thing. A gift of realty can be consummated only by the execution and delivery of a deed. If either is incumbered, the donor gives only what he had to give. He cannot give the interest of a third party in the property. However clear may be the intention of the donor to pay the incumbrances and thus give the entire property, he can accomplish this only by actually paying them. Neither his promise without a valuable consideration, nor his intention as evidenced by such promise, is of any avail to the donee.

Other interesting questions are raised, but they become immaterial in view of the conclusion we have reached.

Judgment is reversed, and new trial ordered.

The other Justices concurred.