## BRAINARD v. COMMISSIONER OF INTERNAL REVENUE.

No. 6098.

Circuit Court of Appeals, Seventh Circuit.
June 29, 1937.
Rehearing Denied Sept. 15, 1937.

John E. Hughes, of Chicago, Ill., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., all of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This petition for review involves income taxes for the year 1928. The question presented is whether under the circumstances set forth in the findings of the Board of Tax Appeals, the taxpayer created a valid trust, the income of which was

taxable to the beneficiaries under section 162 of the Revenue Act of 1928.[1]

The facts as found by the Board of Tax Appeals are substantially as follows: In December, 1927, the taxpayer, having decided that conditions were favorable, contemplated trading in the stock market during 1928. He consulted a lawyer and was advised that it was possible for him to trade in trust for his children and other members of his family. Taxpayer thereupon discussed the matter with his wife and mother, and stated to them that he declared a trust of his stock trading during 1928 for the benefit of his family upon certain terms and conditions. Taxpayer agreed to assume personally any losses resulting from the venture, and to distribute the profits, if any, in equal shares to his wife, mother, and two minor children after deducting a reasonable compensation for his services. During 1928 taxpayer carried on the trading operations contemplated and at the end of the year determined his compensation at slightly less than $10,000, which he reported in his income tax return for that year. The profits remaining were then divided in approximately equal shares among the members of his family, and the amounts were reported in their respective tax returns for 1928. The amounts allocated to the beneficiaries were credited to them on taxpayer's books, but they did not receive the cash, except taxpayer's mother, to a small extent.

In addition to these findings the record discloses that taxpayer's two children were one and three years of age. Upon these facts the Board held that the income in controversy was taxable to the petitioner as a part of his gross income for 1928, and decided that there was a deficiency. It is here sought to review that decision.

■ In the determination of the questions here raised it is necessary to consider the nature of the trust, if any, that is said to have been created by the circumstances hereinbefore recited. It is clear that the taxpayer, at the time of his declaration, had no property interest in "profits in stock trading in 1928, if any," because there were none in existence at that time. Indeed it is not disclosed that the declarer at that time owned any stock. It is obvious, therefore, that the taxpayer based his declaration of trust upon an interest which at that time had not come into existence and in which no one had a present interest. In the Restatement of the Law of Trusts, vol. 1, § 75, it is said that an interest which has not come into existence or which has ceased to exist can not be held in trust. It is there further said: "A person can, it is true, make a contract binding himself to create a trust of an interest if he should thereafter acquire it; but such an agreement is not binding as a contract unless the requirements of the law of Contracts are complied with * * *

"Thus, if a person gratuitously declares himself trustee of such shares as he may thereafter acquire in a corporation not yet organized, no trust is created. The result is the same where instead of declaring himself trustee, he purports to transfer to another as trustee such shares as he may thereafter acquire in a corporation not yet organized. In such a case there is at most a gratuitous undertaking to create a trust in the future, and such an undertaking is not binding as a contract for lack of consideration * * *

"* * * If a person purports to declare himself trustee of an interest not in existence, or if he purports to transfer such an interest to another in trust, he is liable as upon a contract to create a trust if, but only if, the requirements of the law of Contracts are complied with." See, also, Restatement, § 30b; Bogert, Trusts and Trustees, vol. 1, § 112. In 42 Harvard Law Review 561, it is said: "With logical consistency, the courts have uniformly held that an expectancy cannot be the subject matter of a trust and that an attempted creation, being merely a promise to transfer property in the future, is invalid unless supported by consideration." Citing

[1] "§ 162. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that— * * *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not."

882

Lehigh Valley R. R. Co. v. Woodring, 116 Pa. 513, 9 A. 58. Hence, it is obvious under the facts here presented that taxpayer's declaration amounted to nothing more than a promise to create a trust in the future, and its binding force must be determined by the requirements of the law of contracts.

■■ It is elementary that an executory contract, in order to be enforceable, must be based upon a valuable consideration. Here there was none. The ·declaration was gratuitous. If we assume that it was based on love and affection that would add nothing to its enforceability, for love and affection, though a sufficient consideration for an· executed conveyance, is not a sufficient consideration for a promise. Sullivan v. Sullivan, 122 Ky. 707, 92 S.W. 966, 7 L.R.A.(N.S.) 156, 13 Ann.Cas. 163; Fischer ·v. Union Trust Co., 138 Mich. 612, 101 N.W. 852, 68 L.R.A. 987, 110 Am.St. Rep. 329; Fink v. Cox, 18 Johns.(N.Y.) 145, 9 Am.Dec. 191; Kennedy v. Ware, 1 Pa. 445, 44 Am.Dec. 145.

■ What has been said, however, does not mean that the taxpayer had no right to carry out his declaration after the subject matter had come into existence, even though there were no consideration. This he did and the trust thereby became effective, after which it was enforceable by the beneficiaries.

■ The questions with which we are concerned are at what times did the respec-. tive earnings which constitute the trust fund come into existence, and at what times did the trust attach to them. It is obvious that the respective profits came into existence when and if such stocks were sold at a profit in 1928. Did they come into existence impressed with the trust, or was there any period of time intervening between the time they came into existence and the time the trust attached? If there were such intervening time, then during that time the taxpayer must be considered as the sole owner of the profits and they were properly taxed to him as a part of his income.

It is said in the Restatement of the Law of Trusts, § 75c: "If a person purports to declare himself trustee of an interest not in existence or if he purports to transfer such an interest to another in trust, no trust arises even when the interest comes into existence in the absence of a manifestation of intention at that time." This

we think is especially applicable where, as here, there was no consideration for the declaration. It is further stated, however, in the Restatement, § 26k: "If a person manifests an intention to become trustee at a subsequent time, his conduct at that subsequent time considered in connection with his original manifestation may be a sufficient manifestation of intention at that subsequent time to create a trust. * * * the act of acquiring the property coupled with the earlier declaration of trust *may be* a sufficient manifestation of an intention to create a trust at the time of the acquisition of the property." (Our italics, here and hereafter.) In subsection 1 it is said " * * * Mere silence, however, ordinarily will not be such a manifestation. Whether silence is or is not such a manifestation is a question of interpretation." In such interpretation, subsection m is quite pertinent and controlling: "A promise to create a trust in the future is *enforceable,* if * * * the requirements for an enforceable contract are complied with. Whether a promise to transfer property in trust or to become trustee creates in the promisee a right to recover damages for breach of the promise, and whether such a promise is specifically enforceable, are determined by the law governing contracts. Thus, if the owner of property transfers the property in trust and agrees to pay a sum of money to the trustee to be held upon the same trust, he is not liable for failing to pay the money if the promise was made gratuitously * * * but if the promise was made for consideration * * * the promisor is liable thereon. So also, a promise to create a trust of property if thereafter acquired by the promisor imposes no liability upon the promisor if the promise was gratuitous. * * *"

These matters are discussed by Mr. Bogert in his work on Trusts and Trustees, vol. 1, § 112, and we think there is no contrariety of opinion between his conclusions and those of the Restatement. In speaking of the attitudes of courts of law and equity, he says: "Courts of *law* treat transactions which purport to be present transfers, * * * or trusts of interests in future things as not amounting to *contracts* and as void, with some rare exceptions (referring to potential possession) * * * *Equity* has taken a different attitude toward present efforts to create property interests in future things. It has reasoned that such a transaction could not

have been intended to operate as a present transfer because of the inherent impossibility of such an effect. The parties must therefore have expected the only other possible operative result, namely, that there should arise a *contract* to create property interests in the future, by way of absolute transfer, mortgage, trust, or what not * * * Viewed as a *contract* to create property interests in the future, when the things involved are acquired, equity found that in the older common law there was no remedy at all. The law did not recognize the existence of such a *contract*. There was more than inadequacy of remedy; there was total absence of remedy at law. Equity therefore took the position that it would give specific performance or its equivalent. When the things came into existence and into the hands of the intended transferor, they would at once be deemed transferred by way of absolute deed, mortgage, or trust. In other words * * * equity would treat the trust as immediately taking effect and an equitable interest as then passing to the cestui." For instance, he says: "The employee under an existing contract has no present interest in wages to be earned. Such right to receive wages when later earned is a future chose in action. An attempted present conveyance or trust of it can only operate as a *contract* to transfer it when and if acquired, which equity will turn into a perfected transfer when the wages are due." It is obvious that the author's conclusions presuppose, and are based upon, the existence of a valid and enforceable contract between the declarer and the beneficiary. Otherwise the law of contracts would be violated, and equity would be in the attitude of establishing a trust upon an invalid and unenforceable contract, or rather upon no contract at all. The authorities cited by the author in support of his last quoted statement involve valid and enforceable contracts which were based on valuable considerations. In re Bresnan (D.C.) 45 F.(2d) 193; Siter v. Hall, 220 Ky. 43, 294 S.W. 767; Allen v. Chicago Pneumatic Tool Co., 205 Mass. 569, 91 N.E. 887. The same is true as to the additional authority cited by appellant, Bryant v. Shaw, 190 App.Div. 578, 180 N.Y.S. 301.

From what has been said we are convinced that appellant's profits in question were not impressed with a trust when they first came into existence. The Board was obviously of the impression that the trust first attached when appellant credited them to the beneficiaries on his books of account. This act, it seems to us, constituted his first subsequent expression of intention to become a trustee of the fund referred to in his original and gratuitous declaration. Prior to that time we think it is clear that the declaration could not have been enforced against him, and that his mere silence with respect thereto should not be considered as an expression of his intention to establish the trust at a time earlier than the credits. The case of Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, is to be distinguished from the present case in that there the corpus of the trust was in existence. The taxpayer was the life beneficiary and had assigned a part of the trust income to his children. The court there held that the taxpayer had an interest in the trust property that he could assign to others. The same may be said of Lowery v. Helvering (C.C.A.) 70 F.(2d) 713; Tracy v. Commissioner (C.C.A.) 70 F.(2d) 93; Copland v. Commissioner (C.C.A.) 41 F.(2d) 501; Shellabarger v. Commissioner (C.C.A.) 38 F.(2d) 566; and Byrnes v. Commissioner (C.C.A.) 89 F. (2d) 243. In the instant case appellant had no property interest, and there was no assurance that it would ever come into existence.

█ In the Blair Case, supra, the Supreme Court as a matter of duty followed the construction of the trust by the Appellate Court of Illinois. That case, as we have seen, did not decide the question now before us, nor has it been decided by the Supreme or Appellate Court of Illinois, so far as we have been able to discover, hence it becomes our duty to exercise our own judgment.

█ Appellant, however, has presented to us a duly authenticated decree of the circuit court of Cook county, Illinois, in a case wherein this appellant filed his complaint in chancery, against his wife and mother, for the construction of this trust with respect to the question now before us. That court differs with us as to the construction and effect of appellant's declaration of trust, and his subsequent acts with respect thereto. With due deference to that court, however, we can not accept the ruling as an expression of the judgment of the state of Illinois as to the property rights of her citizens in the interpretation of the local laws. That court's jurisdiction is

limited to Cook county, and there are close to a hundred other circuit courts in Illinois of equal jurisdiction which are not bound by the rulings of the Cook county circuit court. For the interpretation of the laws of Illinois, we must look to the decisions of the Supreme and Appellate Courts of that state, for their rulings are binding upon all the inferior courts of Illinois.

█ It is no doubt true that the proffered decree is binding upon the parties to that suit, and it will not be appealed from, because all parties thereto are satisfied with it; but we think it can not be binding on the government, which was not a party, and which of course has no right of appeal.

The order of the Board is affirmed.