# Cover and wife *versus* Manaway.

1. When a deed is found in the hands of a grantee having on its face the
   evidence of its regular execution, it will be presumed to have been made
   on the day of its date; and this presumption is greatly strengthened if
   it is accompanied by an acknowledgment of the same date, in proper
   form, before a proper officer.

2. The officer taking the acknowledgment of a deed must certify the
   same, with the day and year when it was made, and by whom; and he
   will be presumed to have performed his duty, and will not be supposed
   without proof, to have taken the acknowledgment before the deed was
   executed.

3. The acknowledgment of a deed is a judicial act, and the certificate of
   it, in the absence of fraud, is conclusive as to the facts therein con-
   tained.

4. Parol evidence may be introduced, to show that a fraud was practiced

[Cover and Wife *v.* Manaway.]

not only in the execution of a deed, but in the obtaining of the acknowledgment. It must, however, be sufficiently explicit in its character to fairly rebut the presumption, which the law raises, as to the due execution of the deed and its acknowledgment.

5. On a question of fraud great latitude is always allowed. Every fact or circumstance from which a legal inference of fraud may be drawn, is admissible.

6. If there be evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted, if not it should be withdrawn from the jury.

February 1st, 1887. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Fayette county:* Of January Term, 1887, No. 144.

Ejectment by John Manaway against George W. Cover and Louise Cover for 116 acres of land in Henry Clay township, Fayette county. Plea, Not guilty.

The facts of the case as they appeared on the trial before INGHRAM, P. J., are as follows:

Both parties claimed under Jacob Staup who, up to 1872, was the owner of a tract of land in Henry Clay township, containing 234 acres and 131 perches. On the 12th of August, 1872, a judgment was entered against Jacob Staup in favor of John Collins, for $2,000, which became a lien on this tract of 234 acres and 131 perches. On the trial, title in Jacob Staup in 1872 was admitted, and the plaintiff gave in evidence the above mentioned judgment of John Collins entered to No. 139 September Term 1872, against Jacob Staup, and a writ of *scire facias* thereon to No. 230 June Term 1876, which was served on Jacob Staup, the defendant in the judgment, and George W. Cover, *terre tenant,* and judgment of revival was entered against them for $2,529.34. Plaintiff offered the *fi. fa.* issued on said judgment on the 10th of Feb. 1877, to No. 109 March Term, 1877. The return to the *fi. fa.* and subsequent proceedings were not offered in evidence, consequently it does not appear what was done, although in the charge the court assumed that the sheriff, to whom the *fi. fa.* was directed, had levied on and sold the tract of 234 acres and 131 perches to Collins.

On the 17th of January, 1877, before the sheriff's sale of the land, John Collins and G. W. Cover entered into the following agreement:

Agreement made and entered into this 17th day of Jan. 1877 between John Collins of North Union township, Fayette

county Pa., of the first part and George W. Cover of Henry Clay township, county and state aforesaid of the second part, as follows: that a judgement held by the said John Collins against Jacob Staup be revived on *scire facias*, and that the land of the said Jacob Staup shall be sold on a writ issuing on said judgment, and that the said John Collins will buy in said real estate situated in Henry Clay township aforesaid—provided the same does not sell for more than the judgment, and if said John Collins does so purchase said land he will then make a deed to Louise Cover for a part of said land, the number of acres to be determined as the amount of ·money found due George W. Cover upon settlement of all claims between Jacob Staup and George W. Cover and paid to Jacob Staup, and for him by the said George W. Cover—is to thirty-five hundred dollars so shall the number of acres deeded to the said Louise Cover be to the whole number of acres in the tract of land aforesaid now estimated at two hundred and thirty-four acres, the balance of said tract of land to be conveyed to Jane Staup upon her paying to the said John Collins two hundred and seventy-five dollars, with interest from June 1875 until paid, provided, however, that she pays the same within two years from the date—if C. Boyle and William Playford are satisfied—but not otherwise. All costs accruing on said judgment and writ of execution and one half of all costs of deeds, survey and settlement, shall be paid by said Jane Staup as they may accrue, and the said George W. Cover hereby agrees to pay the other half of the costs of deeds, surveys and settlement as above mentioned. A full payment by each of the said parties to whom a deed is to be made shall comply strictly with the aforesaid agreement before they can demand or require a deed to be executed to them or either of them, as witness our hands and seals the day and year aforesaid.

Attest:

J. M. COLLINS.                    JOHN COLLINS, [SEAL.]
                                  G. W. COVER, [SEAL.]

On the 22d day of October, 1872, Jacob Staup and wife conveyed the whole of said tract of land to George Cover and Samuel B. Staup for $3,500.

On the same day George Cover and Samuel B. Staup entered into the following agreement:

Article of agreement, made and concluded this 22d day of Oct., 1872, between Samuel B. Staup etc., of the one part, and George W. Cover etc., of the other. Witnesseth: That whereas the parties to this agreement having purchased from Jacob Staup and wife, a certain tract of land situate in Henry

[Cover and Wife *v.* Manaway.]

Clay township, county and state aforesaid, containing 234 acres and 131 perches for the sum of $3,500, which tract of land was duly and carefully conveyed to them by deed bearing even date herewith, now, then, the parties aforesaid have agreed to make such payments on, and to have and possess such interest in said tract of land, respectively, as the following terms and article indicate and declare. 1. G. W. Cover aforesaid agrees to make the first payment of $1,500 on the tract of land aforesaid and also to pay one half of the judgment for $2,000, held by John Collins against said tract of land. 2. Samuel B. Staup aforesaid, agrees to pay the other one half of the judgment aforesaid. 3. The parties aforesaid shall own and have such interest in said tract of land respectively as they shall pay part of the purchase money aforesaid, i. e., the said Geo. W. Cover shall own and have the undivided 5-7 of said tract of land, and said Samuel B. Staup shall own and have the undivided 2-7 of said land.

Witness: G. CRAWFORD,       G. W. COVER, [SEAL.]
   "         LOUISE STAUP,       S. B. STAUP. [SEAL.]

On the same day Jacob Staup and G. W. Cover entered into the following agreement:

Article of agreement made and entered into between Jacob Staup of etc., of the first part, and Geo. W. Cover, of etc., of the second part, this 22d day of October, 1872. Conditions are as follows: Jacob Staup agrees to make a deed to G. W. Cover for one half of his farm in Henry Clay township, etc., there being 234 acres in the farm as stated in the deed, and G. W. Cover agrees to pay three hundred dollars when deed is acknowledged to the said Jacob Staup, and if the said Jacob Staup or Louise Staup pays G. W. Cover three hundred dollars within three months from the date of the deed, G. W. Cover agrees to make a deed to Louise Staup for the one half of the farm deeded to him; and the said Jacop Staup further agrees to not hold G. W. Cover for the amount stated in the deed, whether it is deeded to Louise Staup or kept by G. W. Cover.

Witness our hands and seals.
        Attested                JACOB STAUP, [SEAL.]
    SUSAN LOUISE STAUP.         G. W. COVER. [SEAL.]

At the time of making the deed and these contracts, Jacob Staup was in jail charged with the murder of Alpheus Glover in the summer of 1872. He afterwards escaped and his whereabouts are now unknown.

On the 23rd day of June, 1873, Louise Cover claimed the land first under the agreement of Collins to convey to her, and

[Cover and Wife *v.* Manaway.]

second under a deed dated November 5th, 1872, from George W. Cover to her, then Louise Staup.

This deed was received in evidence under objection by the plaintiff; because the deed shows that the word "fifth" in the date of the acknowledgment is written over an erasure. The justice of the peace who took the acknowledgment was thereupon called, who proved the date and explained the erasure.

At the time of making this deed, George W. Cover was not indebted to Louise Staup. The plaintiff in rebuttal sought to show that this deed had been dated back by George W. Cover with the knowledge and consent of Louise Staup and that the purpose of the same was to hinder, delay and defraud the creditors of George W. Cover. This evidence sufficiently appears in the opinion of the Supreme Court.

The court submitted the question of fraud to the jury. The defendant presented *inter alia* the following points for charge:

4. There having been no narr. filed in the case, the description in the præcipe is insufficient, under the evidence in the case, to properly designate the land in dispute, and therefore the verdict must be for the defendant.

*A.* Refused.

5. The sale by the sheriff on the 3d day of Feb., 1879, to John Manaway of the land in dispute as the property of Geo. W. Cover, conveyed no title to Manaway, even if the deed from John Collins to Mrs. Cover was in fraud of creditors of Geo. W. Cover, for the reason that the judgment of W. H. Playford was entered on the 25th day of June, 1873, and was revived in 1878, after title was vested in Mrs. Cover, and she was not made a party or *terre tenant* in the writ.

*A.* Refused.

6. Under the pleadings and all the evidence in the case the verdict must be for the defendant.

*A.* Refused.

7. There is no proof that Geo. W. Cover, by the conveyance to the defendant, defrauded, hindered, or delayed, or attempted to defraud, hinder or delay any creditors of his, who are in any way connected with this case; and therefore the verdict must be for the defendant.

*A.* Refused.

Verdict for the plaintiff for the land described in the writ and thereupon judgment; whereupon the defendants took this writ and assigned for error *inter alia* the submission of the question of fraud to the jury under all the evidence, and the refusal of the court to affirm their points as shown above.

*G. W. K. Minor, A. H. Coffroth* and *J. M. Core* (*W. G. Guiles* and *W. H. Ruppel* with them), for plaintiffs in error.

[Cover and Wife *v.* Manaway.]

*A. D. Boyd* (*R. H. Lindsey* with him), for defendant in error.

Mr. Justice CLARK delivered the opinion of the court February 21st, 1887.

The return of the *fieri facias* on the John Collins judgment, the sale of the land in controversy under it, and the sheriff's deed to Collins do not appear to have been read in evidence; whether this resulted from mere inadvertence, we cannot say, but the sale of the land on that writ, and the execution of the deed would seem to have been assumed on both sides. The deed from John Collins and wife to Louise Cover, dated 20th November 1887, was admitted in evidence without objection, and in the recitals of that deed, the premises conveyed are designated as "part of the same premises which said Collins purchased at sheriff's sale, as the property of the aforesaid Jacob Staup, as set forth in a deed from Calvin Springer, high sheriff of said county, dated March 22, 1877, recorded in the Court of Common Pleas of said county, in sheriff's deed docket, No. 2, page 23." At no stage of the trial, does any question seem to have been made as to the title of Collins, or as to the effect of the sale on his judgment.

But whether the land was sold on the Collins' judgment or not, the question is still upon the deed of 5th November, 1872, from George Cover to Louise Staup, who afterwards became Cover's wife. If, on the one hand, we exclude the Collins title altogether, it is plain that the defendants must rely wholly upon their deed of 5th November 1872, and if, on the other hand, we assume the sale and conveyance by the sheriff to Collins, it does not appear, outside of that deed, that on the 20th November 1877, when Collins conveyed to Cover's wife, her estate entered into the purchase, or indeed that she had any estate whatever, which she could have applied to it. By the express terms of the contract of 17th January 1877, between Collins and Cover, "the amount of money found due George W. Cover, upon settlement of all claims between Jacob Staup and George W. Cover, and paid to Jacob Staup, and for him, by the said George W. Cover," was to determine and actually did determine, the measure of Mrs. Cover's interest in the land, and the entire consideration would thus appear to have proceeded from him.

But if George W. Cover, on the 5th November 1872, when he was not indebted, nor anticipating any indebtedness, and before his marriage with Louise Staup, conveyed the premises to her, under the terms and conditions of the deed of that date; and the money, which was subsequently paid by Cover to Collins, was the proceeds of the timber taken from land under

the subsequent agreement with her, Cover might well stipulate with Collins in 1877 for a conveyance of the land to her, in confirmation of the title which he had previously made.

The Collins judgment was the first lien ; it was entered before the conveyance of the land by Jacob Staup to George W. Cover, and by Cover to Louise Staup ; it was revived, and the lien continued against the terre tenant, and the sale upon that judgment certainly extinguished the title of all the parties named. The judgment of William H. Playford, Esq'r, entered 25th June 1873, was discharged by the sale, but as it was revived by *scire facias* in 1878, it became a lien upon whatever interest Cover acquired under the deed from Collins to his wife ; and in order to explain the title of his wife, to trace the consideration, and to establish the *bona fides* of Cover's purchase from Collins, for the benefit of his wife, the deed of 5th November 1872 becomes the necessary subject of investigation.

Whether the court was right or wrong, therefore, in assuming the validity of the Collins title is, we think, a matter of little consequence, as the same questions are presented in either event. Besides, the execution of the Collins deed was not seriously denied at the argument, and it seems to us that a reversal of the judgment on that ground would be of little avail.

The plaintiff in ejectment must recover on the strength of his own title, but if the sheriff's sale and deed to Collins should be wholly excluded, and the deed of 5th November 1872 be shown to be a mere artifice and a fraud, as alleged, then the lien of Manaway's judgment, at the time of its entry, attached to Cover's title, acquired under the deed of 22d October, 1872, and the sale upon his judgment vested that title in him.

The deed of 5th November 1872 was admissible in evidence, we think, without explanation of the alleged erasure ; but as it was afterwards received and read without objection, the ruling of the court did the defendants no harm, and they cannot complain. The deed was duly executed ; it was attested by and properly acknowledged before John Markley, Esq'r, a justice of the peace, on the same day of its date, and the date of the acknowledgment is admittedly in the proper handwriting of the officer. This deed was followed by an article of agreement bearing date, 5th December 1872, between S. B. Staup and his sister Louise Staup, for a partition of the tract between them, and another agreement of the same date between Louise Staup and George W. Cover, for the sale of the timber, by the former to the latter, on that part of the tract acquired by her in severalty by the partition ; the due execution of the said agreements having been attested by the oath of the subscribing witnesses thereto.

[Cover and Wife v. Manaway.]

When a deed is found in the hands of a grantee, having on its face the evidence of its regular execution, it will be presumed to have been made on the day of its date; and this presumption is greatly strengthened, if it is accompanied by an acknowledgment of the same date, in proper form, before a proper officer. The officer taking such an acknowledgment must certify the same, with the day and year when it was made, and by whom (Myers v. Boyd, 96 Penn., 427); and he will be presumed to have performed his duty, and will not be supposed, without proof, to have taken the acknowledgment before the deed was executed. The acknowledgment of a deed is a judicial act, and the certificate of it, in the absence of fraud, is conclusive as to the facts therein stated: Heeter v. Glasgow, 79 Penn., 83; Williams v. Baker, 71 Penn., 476.

But parol evidence may be introduced to show that a fraud was practiced, not only in the execution of the deed, but in the obtaining of the acknowledgment: Heeter v. Glasgow, supra; Williams v. Baker, supra. Fraud however is not to be presumed without proof, nor upon proof which is slight; it must be established upon satisfactory evidence; it must be sufficiently explicit in its character to fairly rebut the presumption, which the law raises, as to the due execution of the deed, and the acknowledgment.

The plaintiffs, in rebuttal, attempted to show, that although the deed was dated, 5th November, 1872, it was in fact not executed for two or three years after that time, and the testimony of George Sargent, Milton Glover, and John Church is relied upon for that purpose. The testimony of Sargent is wholly unimportant, and ineffective for the purpose intended; he was not present at the execution of the deed; he was called upon by the parties to attest the signatures some time after its execution, in accordance with a suggestion of the justice, made at the time of the acknowledgment; he did not pretend to know anything as to the date of its original execution. The examination of Glover was of such a grossly leading character, and the facts elicited thereby so meagre and inconclusive, that his testimony as a whole is certainly entitled to but little if any respect. He admits that he heard part only of the conversation to which he testifies. He says, that Mrs. Staup and her daughter, some time about the year 1875, were discussing the date at which a deed was executed; that Mrs. Staup charged Louise and George with having been at Markley's, to execute a deed, and with having dated it back three years, and Mrs. Cover answered, "No, we only dated it back two years." He does not state what deed, when it was executed, or whether indeed it was executed at all. His statement as to what occurred is vague and unsatisfactory, and his recollection of the transac-

tion is very indistinct.   John Church testified that Mrs. Cover, about 1875, said to him, that she and Cover had been out at Markley's, and that she had got the deed for the property; that "she would show the damned nigger if he would get the property."   He does not say when they had been at Markleys, whether at the time of the conversation or at some previous time, and we have no knowledge as to who was intended by the "damned nigger"; as Manaway had no claim upon Cover at that time, it is improbable that he could have been intended. In the absence of any evidence of collusion or combination, the declarations of Cover were of course inadmissible to affect the title of his wife.

On a question of fraud great latitude is always allowed; every fact or circumstance, from which a legal inference of fraud may be drawn, is admissible: Yerkes *v.* Wilson, 82 Penn., 9.   Whilst the evidence of Sargent, Glover, and Church was perhaps admissible for what it was worth, it was not sufficient, we think, to justify a submission of the question of fraud to the jury.   Since the *scintilla* doctrine has been exploded, both in England and in this country, there is a preliminary question, in all cases, for the court, not whether there is literally no evidence, "but whether there is any that ought reasonably to satisfy the jury, that the fact sought to be found is established; if there is evidence, from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; if not, it should be withdrawn from the jury": Hyatt *v.* Johnston, 91 Penna., 196.   We think the evidence on the question of fraud was vague, meagre, and inconclusive, and was not such as could reasonably or fairly satisfy the jury that the deed in dispute was ante-dated as alleged, or such as would justify an inference of that fact.   The mere casual and loose declaration of Louise Cover, disconnected from the conversation in which it was made, uttered in the heat of a discussion, standing alone, and wholly unsupported, ought not to affect the date of a deed, duly executed, and on the day of its date acknowledged, before a proper officer, whose certificate attesting his official act, in his own hand writing, is not only not impeached, but is sustained by his own oath, and the oath of all the parties present.   There is no evidence whatever to indicate that the officer was in collusion with the parties, or that he was in any way imposed upon in obtaining the acknowledgments; the whole testimony is distinctly and positively to the contrary.

The view which we have taken of this case, renders it unnecessary to consider the other errors assigned.

The judgment is reversed.