# WALKER *v.* WARNER.*

DEEDS; DELIVERY; PRESUMPTIONS; EVIDENCE; TRIAL; CHARGE TO JURY; EVIDENCE; DEPOSITIONS.

1. No particular form or ceremony is essential to the effective delivery of a deed; words or acts showing an intention that the deed shall be complete and operative constitute a good delivery.

2. Possession, alone, of a deed by the grantee, is prima facie evidence of its delivery; and this presumption of delivery based on possession is so strong that it can only be overcome by clear and convincing proof that there was no delivery.

3. Positive testimony, uncontradicted, and not inherently improbable, is prima facie evidence of the fact which it seeks to establish, and the jury is not at liberty to disregard it. (Following *Brown* v. *Petersen,* 25 App. D. C. 359.)

*Deeds.*—The question of the sufficiency of delivery of deed is treated in a note to *Lee* v. *Fletcher,* 12 L.R.A. 171.

4. Where the testimony is of such a conclusive character as would compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition thereto, it must be withdrawn from the consideration of the jury.

5. Where the question in an action of ejectment is whether a deed of real estate, manually delivered by the grantor to the grantee, was actually delivered so as to pass title, it is error for the trial court to charge the jury that they may consider, not only the acts and conduct of the grantor as tending to show his intent, but also the acts and conduct of the grantee after the delivery of the deed, such as his failure to record the deed, and permitting the grantor to pay taxes on the property conveyed, collect the rents, and make repairs, as the intent of the parties is to be determined by what occurred at the time of the transaction.

6. When a deed, sufficient to vest a title, is executed and delivered, the law raises the presumption of an intent to pass title in accordance with its terms.

7. A deed cannot be delivered to the grantee upon a condition not expressed in the instrument. (Following *Newman* v. *Baker*, 10 App. D. C. 197, and *Bieber* v. *Gans*, 24 App. D. C. 517.)

8. The fact that a deed once delivered is withheld from record for a long period, or until the death of the grantor, either at, or without, the request of the latter, has no effect to impair its effect as a conveyance of title, or to operate any extinguishment (following *Fitzgerald* v. *Wynne*, 1 App. D. C. 107, and *Bunten* v. *American Security & T. Co.* 25 App. D. C. 226); nor can the additional fact that the grantor retains possession and control of the property conveyed, defeat the legal consequences of the actual delivery of the deed; but such circumstances, if unexplained, would have weight in determining whether there had been an actual delivery, where there is evidence of circumstances tending to raise a doubt whether there was in fact such a delivery, or whether it came properly into the possession of the grantee at the time, or subsequently.

9. It is error for the trial court to refuse to direct a verdict for the plaintiff in an action of ejectment where the question is as to the delivery of the deed under which the plaintiff claims title, when the uncontradicted testimony shows that the deed was duly executed and acknowledged and manually delivered to the grantee by the grantor, an old colored servant of the grantee's family, who had no children or near kin; and there is nothing to show that the grantee obtained possession of the deed by improper means, and when the defense is based solely on the fact that the deed was not recorded by the grantee until the grantor's death several years after its delivery,

during which time the grantor remained in possession and control
of the property conveyed.

10. Where there is doubt as to whether a deed of real estate was de-
    livered, evidence of the previous making of a will by the grantor in
    favor of the grantee, its destruction, and the substitution there-
    for of the deed, is admissible as a circumstance tending to show
    the intent of the grantor as to the delivery of the deed.

11. It is improper to include among the interrogatories attached to a
    deposition a general interrogatory asking the witness whether he
    knows, or can set forth, any other matter or thing, which may be
    of benefit or advantage to the parties or material to the subject
    of the examination or the matters in issue, as it does not inform
    the opposing party of the answer that is expected, so as to enable
    him to cross-examine thereon; but such defect goes to the form of
    the deposition, and a motion to exclude or suppress the answer
    should be made in advance of the trial, so that the party relying
    on the answer may have an opportunity to remedy the defect, if
    desired, by retaking the deposition on that point.

No. 1803.   Submitted February 13, 1908.   Decided March 31, 1908.

HEARING on an appeal by the plaintiff from a judgment of the
Supreme Court of the District of Columbia, on verdict, in an
action of ejectment.                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Mary Dod Walker, brought this action in the
supreme court of the District of Columbia, on November 4,
1905, against the appellees, David Warner, Mary A. Stewart,
Thomas W. Irving, and Martina Irving, to recover the posses-
sion of lot 89 in Thomas and Perry's subdivision of lots in
square 181, in the city of Washington, and the value of the use
and occupation of the same from and after March 1, 1904.
Issue was joined on defendants' plea of the general issue, not
guilty.

Plaintiff claimed under a deed purporting to have been execut-
ed by Rebecca Thompson, under seal, on September 13, 1898.
Upon a recited consideration of $1 paid to the grantor, the deed
conveyed the title to the lot aforesaid, to the plaintiff, Mary Dod

Walker. That the deed was signed, sealed, and delivered in his presence was attested by the signature of Clarence F. Donohue. It bore a certificate of the said Donohue, as a notary public, under date of September 13, 1898, of the acknowledgment of execution by the grantor. It was indorsed as recorded by the recorder of deeds for the District of Columbia, on February 29, 1904.

Clarence F. Donohue, called as a witness by plaintiff, testified as follows: That, in September, 1898, he was a notary public in and for the District of Columbia; that, on the 13th day of September, 1898, at the request of the plaintiff, he called at her house, No. 202 A street, Northeast, Washington, District of Columbia, to take an acknowledgment of a deed. There lay upon the table a deed purporting to be a deed in fee simple from Rebecca Thompson to the plaintiff, Mary Dod Walker, and testified that he took the acknowledgment of Rebecca Thompson, whom he saw sign said deed. There were present at the time, the plaintiff, Rebecca Thompson, and himself. On cross-examination, the witness testified that, before taking the acknowledgment, he asked the grantor, Rebecca Thompson, whether she knew what the paper was, and she said she did; and she further stated that she wanted Mrs. Walker, the plaintiff, with whose family she had long lived, to have the property and everything she had. That, when he reached the house, he was shown into the parlor, and Rebecca was called by the plaintiff and came into the room from the kitchen. She was a colored woman whom witness judged to be between sixty-five and seventy years of age; he had never seen her before, nor has he ever seen her since. She was introduced to witness by the plaintiff. Witness did not read the deed to grantor, nor was it read to her in his presence. No consideration passed from the plaintiff to the grantor in his presence. The deed was on the table when witness arrived at the house, and it remained there while he was present and was there when he left, there having been no manual delivery of it.

The said deed was thereupon shown to witness and he identified it as the one which had been acknowledged before him.

Plaintiff's deposition on her own behalf, taken in Florence, Italy, stated the following facts: "In 1898, I resided with my

family and Rebecca Thompson at 202 A street, Southeast, Washington, District of Columbia. I was acquainted with Rebecca Thompson, deceased, from 1865 until the time of my coming over here in October, 1899. I think her death took place in 1905. My relations with her were of the closest character and practically all the time we were in the same house. My relations with her were always friendly and intimate. My family were always on intimate terms with her. I knew that Rebecca owned property. It was situated on O street, Northwest, near 16th street, in the city of Washington, District of Columbia. She acquired it, I think, in 1874. She paid, I think, $2,000 for it. She acquired the money from my father-in-law, Robert J. Walker. The deed referred to (which was attached to the interrogatories and is the same deed which was offered in evidence at the trial and is hereinafter set forth) was in my possession until October, 1899. Previous to leaving America, I delivered it into the hands of my brother, S. Bayard Dod, because my brother had charge of my papers and business. I have never had possession of it since. I saw Rebecca Thompson last at the sisters on Capitol Hill in September, 1899. Rebecca could read and write, but with so much difficulty that she rarely did either. After parting with Rebecca I had many letters from her. I have never kept any of her letters. They were always written in someone's else handwriting. It would then be impossible for me to give the dates of her letters, but she was in continuous correspondence with me until a few weeks before her death. The letters were of no importance, and in none of them did she ever refer to her property. Rebecca came into the family more than sixty years ago. She was given the money by my father-in-law, Robert J. Walker, by which she became free. After so many years of affectionate intercourse she was more attached to us than to anyone else. Whatever money she had came to her from the Walkers."

The deposition of Alice D. Walker taken at the same time and place was then read in evidence, as follows: "My name is Alice D. Walker. I was born January 18th, 1870. I reside in Florence, Italy, with my mother, Mrs. Mary Dod Walker. Rebecca

Thompson was a colored woman, lived in our family at the time of my birth, and I do not remember the time that I did not know her. She continued to live with us when we moved from 5th street, Northwest, in Washington, District of Columbia, to No. 202 A street, Southeast, in that city. She remained in the family until her ill health made it necessary for her to leave us, in order that she might be cared for by the sisters. My relations with her and my family's relations with her were most intimate and affectionate, and her position was more like a member of the family than a servant. I knew Rebecca owned a house on O street, Northwest, near 16th street, in the city of Washington, District of Columbia, and that the money with which she purchased it had been given her by the family. I have seen the deed which accompanies these interrogatories. I first saw the deed at No. 202 A street, Southeast, Washington, District of Columbia, September 13th, 1898, in the possession of Rebecca Thompson. I saw Rebecca Thompson sign and acknowledge the deed and place it in the hands of my mother. The deed remained in the hands of my mother until a few days before October 5th, 1899. My mother gave the deed into the keeping of my uncle, S. Bayard Dod, and, as far as I know, it has never been in her possession since that time. I saw Rebecca Thompson for the last time at the colored sisters on Capitol Hill in September, 1899. Rebecca Thompson could read and write, but with great difficulty. Rebecca Thompson did write to my mother continuously, and I always read her letters. As they were of no importance, they were always destroyed as soon as they were answered. I could not give the dates of her letters, but, so far as I can recollect, there was never any reference in them to her property."

The answer to the thirteenth interrogatory propounded to this witness was excluded on objection of the defendants. No objection had been taken to this answer before the deposition was offered in evidence. The interrogatory and answer read as follows:

Q. 13. "Do you know, or can you set forth, any other matter or thing, which may be of benefit or advantage to the parties at issue in this case, or either of them, or that may be material to

Vol. XXXI.—6.

the subject of this your examination, or the matters in question in this cause? If yea; set forth the same fully and at length in your answer.

A. In answer to this interrogatory, I would say that, even during the lifetime of her nearest relatives, her brother and his family, Rebecca used to often say that she wished my family to have her house on O street. She made a will some years ago leaving the house to my mother, for the reason that the money with which the property was purchased had been obtained from our family; but, fearing there might be some trouble about that, she had that will destroyed, and had the deed drawn up conveying the property to my mother."

The deed before described was then read and received in evidence. S. Bayard Dod testified on behalf of plaintiff, by deposition, as follows: "My name is S. Bayard Dod, and my residence is South Orange, New Jersey, and I am president of the First National Bank of Hoboken. I am the brother of Mrs. Mary Dod Walker, the plaintiff in this suit. She is now in Florence, Italy, where she has been for six or seven years." (Witness then identified the deed heretofore offered in evidence and hereinbefore set forth.) "The deed referred to was in my possession. When my sister left for Europe she handed me this deed with other papers to take care of for her. I retained possession of it until February, 1904, when I sent it to Rev. Mr. Clark, of Washington, District of Columbia."

On cross-examination, the witness testified that "I sent the deed to Mr. Clark immediately after Rebecca Thompson's death, at my sister's request. My sister was then in Europe. I heard of Rebecca Thompson's death from Mrs. Robert J. Walker, the wife of the brother of my sister's husband. My instructions were not to place this deed on record until after Rebecca Thompson's death. During the time I held the deed, up to the time of Rebecca Thompson's death, I paid no taxes or insurance upon the property for my sister, nor did I collect the rents. During that time I was partly looking after my sister's property in this country. I collected rents from a piece of property which she owns in Washington, District of Columbia. I know nothing

about the deed in question except that my sister gave it to me with the request that I would record it as soon as I heard of Rebecca Thompson's death. I never examined the deed."

J. W. Clark, for plaintiff, testified as follows: "That he was the rector of St. James Episcopal Church, Washington, District of Columbia. That, a few days prior to February 29, 1904, the day of the recording of the deed aforesaid, as shown by the indorsement of the deed on the back thereof, he received the same from S. Bayard Dod, the brother of the plaintiff; that he, the witness, thereupon took the said deed to the office of the recorder of deeds in the District of Columbia, and there left it for record.

Defendant Martina Irving was called by the plaintiff, and testified that she had occupied the premises as a tenant prior to 1898, and continuously since. That she paid rent to Rebecca Thompson at rate of $18 per month during her life, and after her death paid the same to defendant Warner. On cross-examination she said she had been in possession for about twenty years. That repairs had been paid out of the rent. Never paid any rent to Mrs. Walker. Never heard Rebecca Thompson say she no longer owned the property.

Defendant Warner, called by plaintiff, testified to receipt of the rent since March 4, 1904, and that he made no claim to the premises other than as executor under the will of Rebecca Thompson.

Plaintiff then offered to read the will of Rebecca Thompson for the sole purpose of showing that all the defendants claimed under Rebecca Thompson, who was the common source of title. The defendants objected to the will being read in evidence, but conceded the claim of common source; and the will was not read.

On behalf of defendants, David Warner, one of defendants, testified as follows: That since 1895, at the request of Rebecca Thompson, he had collected the rents, paid the taxes and the fire-insurance premiums on the property in question, and had turned over the balance of the rents to her until her death. Has since collected the rents and held them as her executor. Plaintiff has never made any demands upon him for the rents, and he

had never collected any for her, nor paid any to her. Present tenants, the Irvings, have been in possession all the time he has had anything to do with the property. They had, on several occasions prior to Rebecca Thompson's death, asked him to be allowed to make repairs, and, after asking Rebecca Thompson and getting her permission, he consented, and payments for such repairs was deducted from the rent. Further testified that Mr. S. Bayard Dod had written to him on several occasions and requested him to forward the tax bills on certain property owned by Mrs. Walker in the southeastern section of the city, but that Mr. Dod had not on those occasions, nor at other times, requested him to get tax bills on the property in question.

Upon the conclusion of this evidence, the plaintiff moved the court to direct a verdict for her, and excepted to the refusal of the court to so direct the jury.

After charging the jury that plaintiff's right to recover depended upon the execution and delivery to her of the deed by Rebecca Thompson, and that the delivery of a deed raises a presumption that it was with intent to pass title, the court proceeded to charge the jury to the effect that the question turned upon the intent of the grantor at the time of the delivery of the deed; and that this intent might be arrived at by the consideration of the conduct of the parties after the delivery of the deed, such as the failure to record the deed, and the actual possession and receipt of the revenues of the property by the grantor during her life. And that, if there was no intent to pass title at the time of the delivery of the deed, the plaintiff did not become the owner of the property. This charge will be recited hereafter. Plaintiff excepted to said charge, stating that, as the question left to the jury was whether Rebecca Thompson intended to deliver the deed as a title to the property and thereby to devest herself of the title, the only acts or conduct proper to be considered by the jury as tending to show such intent were the acts and conduct of Rebecca Thompson; and that it was error to instruct the jury that they might consider, as tending to show such intent, the acts or conduct of plaintiff after the delivery of the deed, such as her failure to record the deed, and permitting Re-

becca Thompson to collect the rents, pay taxes, and make repairs.

*Mr. Charles Cowles Tucker* and *Mr. J. Miller Kenyon* for the appellant.

*Mr. John C. Gittings, Mr. J. Morrill Chamberlin,* and *Mr. Robert J. Kennedy* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

We are of the opinion that, upon the evidence recited, the court erred in denying the motion to direct the jury to return a verdict for the plaintiff. The evidence was direct and clear that Rebecca Thompson, with knowledge of the contents of the deed, not only affixed her signature thereto, but also acknowledged its execution to the notary public, who certified to the fact in the proper manner. It was read in evidence without objection. As stated by the court in the commencement of his charge, the single question was as to the delivery of this deed.

No particular form or ceremony is essential to the effective delivery of a deed. Words or acts showing an intention that the deed shall be complete and operative constitute a good delivery. *Simmons* v. *Simmons,* 78 Ala. 365, 367; *Creighton* v. *Roe,* 218 Ill. 619, 621, 109 Am. St. Rep. 310, 75 N. E. 1073. When last seen by the notary who attested it as a witness and certified to its acknowledgment, it was lying on the table where the execution occurred. Alice D. Walker testified that she saw Rebecca Thompson sign and acknowledge the deed and place it in the hands of the plaintiff. The deed undoubtedly passed into the possession of the grantee, and remained in her possession and that of her agents until produced at the trial. There was nothing tending to show that any fraud or imposition had been practised upon the grantor, or that possession of the deed had been obtained by any improper means. Possession, alone, of a deed by the grantee is prima facie evidence

of its delivery *Sicard* v. *Davis,* 6 Pet. 124, 137, 8 L. ed. 342, 347; *Games* v. *Stiles,* 14 Pet. 322, 326, 10 L. ed. 476, 478; *Stanley* v. *Schwalby,* 162 U. S. 255, 274, 40 L. ed. 960, 966, 16 Sup. Ct. Rep. 754. By the great weight of authority, this presumption of delivery based on possession is so strong that it can only be overcome by clear and convincing proof that there had been no delivery. *McGee* v. *Allison,* 94 Iowa, 527, 531; 63 N. W. 322; *Inman* v. *Swearingen,* 198 Ill. 437, 64 N. E. 1112; *McCann* v. *Atherton,* 106 Ill. 31; *Creighton* v. *Roe,* and *Simmons* v. *Simmons,* supra; *Rohr* v. *Alexander,* 57 Kan. 381, 384, 46 Pac. 699; *Cover* v. *Manaway,* 115 Pa. 338, 345, 2 Am. St. Rep. 552, 8 Atl. 393. This last case holds that the presumption is strengthened where the execution of the deed had been acknowledged. In *McGee* v. *Allison,* supra, it was said: "Such a rule is necessary to the security of titles. Any other would render all holdings uncertain, and would be disastrous in the extreme."

As we have seen, there was nothing in the evidence relating to the execution and delivery of the deed tending to raise the slightest inference that the grantee obtained possession through improper or illegal means. Nor was there any attempt to contradict the positive statement of the witness that it had been actually delivered by the grantor immediately after execution and acknowledgment. There was nothing inherently improbable in the circumstances surrounding and accounting for the transaction. On the contrary, they tended to strengthen the probability of the truth of the witness's statement. The grantor had been a favored slave of the grantee's father-in-law, through whose bounty she acquired her freedom, and from whom she received the money of which the property in question was a result. After her freedom she had remained with the family, upon terms of friendly intimacy not uncommon in such cases. She had no children, and, apparently, no near kin, if any at all. Nothing was more natural, therefore, than that, towards the close of her life, she should have selected the then head of this family as the object of her bounty. But, aside from this direct and positive evidence of the delivery of the deed that

had been voluntarily executed and acknowledged, there was the strong presumption of delivery raised by the grantee's possession of the deed, which there was no attempt to rebut. With a prima facie case so made there remained nothing to be submitted to the jury.

In a case where the question was one of delivery of an instrument, it was said by Mr. Justice Story: "What is prima facie evidence of a fact? It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose. The jury are bound to consider it in that light, unless they are invested with authority to disregard the rules of evidence, by which the liberty and estate of every citizen are guarded and supported. No judge would hesitate to set aside their verdict and grant a new trial, if, under such circumstances, without any rebutting evidence, they disregarded it. It would be error on their part, which would require the remedial interposition of the court. In a legal sense, then, such prima facie evidence, in the absence of all controlling evidence, or discrediting circumstances, becomes conclusive of the fact; that is, it should operate upon the minds of the jury as decisive to found their verdict as to the fact. Such we understand to be the clear principles of law on this subject." *Kelly* v. *Jackson,* 6 Pet. 622, 632, 8 L. ed. 523, 526. See also, *Crane* v. *Morris,* 6 Pet. 598, 620, 8 L. ed. 514, 522; *United States* v. *Wiggins,* 14 Pet. 334, 347, 10 L. ed. 481, 488; *Lilienthal* v. *United States,* 97 U. S. 237, 268, 24 L. ed. 901, 905; *Brown* v. *Petersen,* 25 App. D. C. 359, 363. In the case last cited it was said: "The appellant's contention would require that every case of uncontradicted and unimpeached evidence should be submitted to a jury, where there is no countervailing testimony. But this is not the law. The law is that positive testimony uncontradicted, and not inherently improbable, is prima facie evidence of the fact which it seeks to establish it, and the jury is not at liberty to disregard it."

With the prima facie case made by the possession of the deed, had that question alone been submitted to the jury, it

would have been the duty of the court to set aside a verdict disregarding the same. Where the testimony is of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition thereto, it may be withdrawn from the consideration of the jury. *Phœ Mut. L. Ins. Co.* v. *Doster,* 106 U. S. 30, 32; 27 L. ed. 65, 66; *Connecticut Mut. L. Ins. Co.* v. *Lathrop,* 111 U. S. 612, 615, 28 L. ed. 536, 537.

The court, in fact, instructed the jury that possession was prima facie evidence of delivery, and that, in the absence of anything else, that presumption would control. And, doubtless, but for his view of the effect of evidence relating to the conduct of the parties after the possession of the deed had passed to plaintiff, he would have directed the jury to return a verdict for her.

This brings us to the consideration of the error assigned on the charge thereafter given which discloses that view. This instructed the jury that the question turned upon the intent with which the grantor delivered the deed to the grantee, provided they should find that it had in fact been delivered. They were further charged that in ascertaining this intent they should take into consideration the mutual conduct of the two parties afterwards. "By mutual consent," he said, "I mean the conduct that was adopted by both of them, and which each knew the other was adopting, and assented to. Therefore, you are entitled to take into consideration the fact that Mrs. Walker never recorded this deed during the lifetime of Mrs. Thompson; you are entitled to take into consideration the fact that Mrs. Walker permitted Mrs. Thompson to exercise dominion and ownership and to retain possession of the real estate, collect the rents, make repairs, and pay taxes, and the like, which tend to show that Mrs. Walker understood there was no intent to pass title at the time the deed was delivered. You can take such facts into consideration; and it is for you to decide whether in this case there are sufficient facts which tend to show that there was no intent to pass the title, and make Mrs. Walker the owner, and sufficient to overcome the presumption of fact

which the law draws out of the mere fact of delivery. If you find in this case the facts are such as to prove that there was no intent on the part of Mrs. Thompson to pass the title and to make Mrs. Walker the owner at the time of the delivery of this deed, then the title did not pass by the delivery of the deed, and Mrs. Walker never became the owner, although she did have the physical possession of the deed. The burden is on the plaintiff to prove by a preponderance of the evidence that she is the owner at this time, which involves the burden on her of proving by a preponderance of the evidence that at the time of the delivery of the deed the title passed. In order that you may not be misled by that statement as to the presumption of proof, she would raise a prima facie case in her favor by simply proving that the deed had been delivered to her. But that rule does not settle the matter, because, as I said, you have to take into consideration the other facts in determining whether or not, weighed by all the facts of the case, that presumption ought to attach to this particular case."

This last instruction practically destroyed the benefit of the presumption arising from the possession of the deed, and was erroneous for the reasons stated in the exceptions reserved to it by the plaintiff.

The intent of the parties is to be determined by what occurred at the time of the transaction. When a deed sufficient to vest a title is executed and delivered, the law raises the presumption of an intent to pass the title in accordance with its terms. A deed cannot be delivered to the grantee upon a condition not expressed in the instrument. *Newman* v. *Baker*, 10 App. D. C. 197; *Bieber* v. *Gans,* 24 App. D. C. 517. Moreover, there was not a circumstance in the transaction tending to show that there was any condition attached to the delivery in this case, or that the grantor did not contemplate the necessary legal consequence of her acts. The fact that a deed once delivered is withheld from record for a long period or until the death of the grantor, either at, or without, the request of the latter, has no effect to impair its effect as a

conveyance of title, or to operate any extinguishment. *Fitzgerald* v. *Wynne,* 1 App. D. C. 107, 120; *Bunten* v. *American Security & T. Co.* 24 App. D. C. 226, 232.

Nor can the additional fact that the grantor was permitted to remain in possession and control of the property conveyed, defeat the legal consequence of the actual delivery of the deed. *Fischer* v. *Union Trust Co.* 138 Mich. 612, 68 L.R.A. 987, 110 Am. St. Rep. 329, 101 N. W. 852; *McGee* v. *Allison,* 94 Iowa, 527, 531, 63 N. W. 322; *Burry* v. *Young,* 98 Cal. 446, 451, 35 Am. St. Rep. 186, 33 Pac. 338; *Driscoll* v. *Driscoll,* 143 Cal. 528, 77 Pac. 471; *Saffold* v. *Horne,* 72 Miss. 470, 487, 18 So. 433; *Creighton* v. *Roe,* 218 Ill. 619, 109 Am. St. Rep. 310, 75 N. E. 1073. Such circumstances as the retention of possession and control by the grantor, coupled with failure to record the deed, if unexplained, would have weight in determining whether there had been an actual delivery, when there is evidence of circumstances tending to raise a doubt whether there was in fact a delivery of the deed, or whether it had come properly into the possession of the grantee at the time or subsequently. As we have seen, it is not permissible to show that the delivery was upon a condition not expressed in its terms, or in some contemporaneous instrument intended to operate therewith; and, for a stronger reason, the subsequent conduct of the parties cannot be made the ground of inference as to the intent of the parties at the time of actual delivery, in order to rebut the presumption arising from the execution and acknowledgment of the grantor and possession by the grantee.

There was no evidence in this case tending to show any circumstances from which it could be inferred that there was any other intention of the parties at the time than that manifested by the acts of execution, acknowledgment, and delivery of the deed. Moreover, it would seem that the conduct of the grantee in permitting the grantor to receive the entire benefit of the property during her life may be reasonably accounted for without raising a necessary suspicion in regard to the manner in which she came into possession of the deed. Grantor's home with the grantee had been broken up, and it was natural that

the latter should have permitted her to enjoy the revenues of the property for maintenance during her remaining years. In view of the relations of the parties, and the fact that the conveyance was a gift founded on affection and a sense of gratitude for past bounty and kindness, it would have been cruel and unnatural to withhold from the grantor the income of the property while she continued to live and to have need therefor.

In the view that we have taken of this case, the answer of the witness Alice D. Walker to the thirteenth interrogatory is unimportant and has not been considered.

If there had been any evidence tending to raise a question as to the execution and delivery of the deed which would warrant the consideration of the evidence relating to the retention of possession by the grantor and the failure to record the deed until after her death, then the concluding statement as to the making of a will by the grantor and its destruction and the substitution of the deed would constitute a material circumstance tending to support the fact of delivery of that deed, and thereby become admissible. It is proper to remark that general interrogatories like the one in question are improper as they do not inform the opposing party of the answer that might be expected so as to enable a cross-examination to be had thereon. Such defects, however, go to the form of the deposition, and should be called attention to by motion to exclude or suppress the answer, in advance of the trial, so that the party relying upon the answer could have an opportunity to remedy the defect, if desired, by retaking the deposition on that point, before entering upon the trial

For the reasons given, the judgment will be reversed with costs and the cause remanded for a new trial. *Reversed.*